IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **James L. "Jimmy" Cooper, III**, an individual, **Martin Cowen**, an individual, and the **Georgia Green Party**, an unincorporated political body,<br><br>Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>Defendant. | Case No.<br><br>_____<br><br><br><br>**Complaint** |

# Nature of the Case

1. This is an action to modify Georgia's ballot-access requirements for independent and third-party candidates in light of the current public health emergency caused by the novel coronavirus. Although the Secretary of State has exercised his authority under

O.C.G.A. § 21-2-50.1 to extend the deadline for independent and third-party candidates to submit nomination petitions for the 2020 general election, he lacks authority under state law to pro-rate the number of signatures required or to modify any other petition requirements. The result is that the plaintiffs have no reasonable opportunity to qualify for the ballot without endangering their own lives and the lives of others.

2. The plaintiffs are two third-party candidates for U.S. Representative who timely filed a declaration of candidacy and paid the required qualifying fee in March and the Georgia Green Party, which seeks to have the Green Party's nominee for President of the United States appear on the ballot in November. They allege that, under these unprecedented circumstances, Georgia's ballot-access restrictions unconstitutionally burden their rights under the First and Fourteenth Amendments to the U.S. Constitution, and they seek declaratory and injunctive relief pro-rating the number of petition signatures required and making other appropriate modifications to the petition requirements for the 2020 general election.

## Jurisdiction and Venue

3. This Court has original jurisdiction over this case under Article III of the U.S. Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3).

4. This suit is authorized by 42 U.S.C. § 1983.

5. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) and in the Atlanta Division under Local Rule 3.1.

## Parties

7. Plaintiff James L. "Jimmy" Cooper, III, is the Georgia Green Party's nominee for U.S. Representative in Georgia's Eighth Congressional District. He timely filed a declaration of candidacy and paid the required qualifying fee in March 2020 but has not yet submitted the nomination petition required by Georgia law. He is 51 years old and meets all of the other qualifications for the office of U.S. Representative.

8. Plaintiff Martin Cowen is the Libertarian Party of Georgia's nominee for U.S. Representative in Georgia's Thirteenth Congressional District. He timely filed a declaration of candidacy and paid the required qualifying fee in March 2020 but has not yet submitted the nomination

petition required by Georgia law. He is 68 years old and meets all of the other qualifications for the office of U.S. Representative.

9. Plaintiff Green Party of Georgia is an unincorporated political body within the meaning of O.C.G.A. § 21-2-170. The party is registered under O.C.G.A. § 21-2-110(a) and (b). The party has participated in every presidential election since 1996 and expects to do so again this year. The party is prepared to submit its slate of presidential electors before the June deadline and to meet all of the other qualifications to have its presidential candidate appear on the ballot in the 2020 general election.

10. Defendant Brad Raffensperger is the Secretary of State of the State of Georgia (hereinafter, the "Secretary"). He is the chief election official of the State of Georgia. He is charged by statute with enforcing Georgia's ballot-access restrictions. At all relevant times, the Secretary exercised his authority under color of state law within the meaning of 42 U.S.C. § 1983. He is sued in his official capacity only.

## Background

**I.    The Novel Coronavirus Presents a Threat to Public Health**

11. In December 2019, an outbreak of respiratory disease caused by a novel coronavirus emerged in Wuhan, China.

12. The respiratory disease caused by the novel coronavirus, now known as "COVID-19," is an infectious disease that can spread from person to person and can result in serious illness and death.

13. On January 30, 2020, after the coronavirus outbreak had spread well beyond China, the World Health Organization declared that COVID-19 constitutes a Public Health Emergency of International Concern.

14. On January 31, 2020, as a result of confirmed cases of COVID-19 in the United States, Health and Human Services Secretary Alex M. Azar II declared a nationwide public health emergency retroactive to January 27, 2020.

15. On February 27, 2020, the Centers for Disease Control issued guidance recommending, among other things, that members of the public practice "social distancing," minimizing close contact with others, in order to slow the spread of COVID-19.

16. On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.

17. On March 13, 2020, the President of the United States declared a national emergency (retroactive to March 1, 2020) due to the COVID-19 outbreak in the United States.

18. On March 14, 2020, Governor Brian Kemp declared a Public Health State of Emergency in the State of Georgia due to the public health emergency from the spread of COVD-19.

19. Also on March 14, 2020, Secretary of State Raffensperger postponed Georgia's presidential preference primary from March 24 to May 19, 2020, due to the public health emergency from COVID-19. In announcing the postponement, Secretary Raffensperger noted that older Americans face an increased risk from COVID-19 and that "[a]ll individuals should practice social distancing and minimize contact with others . . . ."

20. On March 20, 2020, due to the COVID-19 public health emergency, Secretary Raffensperger invoked his authority under O.C.G.A. § 21-2-50.1 to extend the deadline for independent and political-body candidates to submit nomination petitions until 12:00 noon on Friday, August 14, 2020.

21. On March 24, 2020, Secretary Raffensperger announced unprecedented steps to protect public health and safety in the election process as a result of COVID-19. Those steps include mailing absentee ballot request forms to Georgia's 6.9 million active voters, encouraging as many voters as possible to vote by mail, and implementing social-distancing measures in polling places during the May 19 primary election.

22. According to the Centers for Disease Control, older adults (particularly those over 65) and people of any age who have serious underlying medical conditions (including asthma, heart disease, cancer, and diabetes) may be at higher risk for severe illness from COVID-19.

23. As of 7:00 p.m. on March 25, 2020, Georgia reported 1387 confirmed cases of COVID-19 and 47 deaths from the disease. There was at least one confirmed case of COVID-19 in 96 of Georgia's 159 counties.

**II.   Georgia's Current Ballot-Access Restrictions**

24. Georgia's current ballot-access laws distinguish between three kinds of candidates for partisan public offices: (1) candidates nominated by a political party; (2) candidates nominated by a political body; and (3) independent candidates.

25. A "political party" is any political organization whose nominee received at least 20 percent of the vote in the last gubernatorial or presidential election. O.C.G.A. § 21-2-2 (25).

26. Political parties choose nominees in partisan primaries, and the candidate nominated by the party appears automatically on the ballot for any statewide or district office. O.C.G.A. § 21-2-130(1).

27. The only political parties that meet the current definition of "political party" under Georgia law are the Democratic Party of Georgia and the Georgia Republican Party.

28. A "political body" is any political organization other than a political party. O.C.G.A. § 21-2-2 (23).

29. Political bodies must nominate candidates for partisan public offices by convention. O.C.G.A. § 21-2-170(g).

30. Political-body candidates for *non-statewide offices*, including the office of U.S. Representative, do not appear automatically on the ballot. In order to appear on the general-election ballot, such candidates must submit: (1) a notice of candidacy and qualifying fee, O.C.G.A. § 21-2-132(d); and (2) a nomination petition signed by five percent of the

number of registered voters eligible to vote for that office in the last election, O.C.G.A. § 21-2-170(b).

31. The notice of candidacy and qualifying fee for non-statewide candidates is due during the thirty-fifth week before the election (a date that falls in March). O.C.G.A. § 21-2-132(d).

32. The nomination petition for non-statewide candidates is due no later than noon on the second Tuesday in July. O.C.G.A. § 21-2-132(e). The Secretary's recent order extends that deadline for the 2020 election to noon on Friday, August 14, 2020.

33. The nomination petition must be on sheets of uniform size and different sheets must be used by signers residing in different counties or municipalities. O.C.G.A. § 21-2-170(d). Each sheet of the nomination petition must also contain a sworn and notarized affidavit of the circulator attesting, among other things, that each signature on the sheet was gathered within 180 days of the filing deadline. *Id.*

34. For the 2020 election, a political-body candidate for U.S. Representative in Georgia's Eighth Congressional District must submit at least 20,719 valid signatures in order to appear on the general-election ballot.

35.     For the 2020 election, a political-body candidate for U.S. Representative in Georgia's Thirteenth Congressional District must submit at least 24,503 valid signatures in order to appear on the general-election ballot.

36.     Political-body candidates for *President of the United States* do not appear automatically on the ballot. In order to appear on the general election ballot, (1) a notice of candidacy and qualifying fee, O.C.G.A. § 21-2-132(d); and (2) a nomination petition containing 7,500 signatures. O.C.G.A. § 21-2-170(b); *Green Party v. Kemp*, 171 F. Supp. 3d 1340, 1372 (N.D. Ga. 2016) (reducing the number of signatures from one percent of registered voters to 7,500), *aff'd* 674 F. Appx. 974 (11th Cir. 2017) (mem).

37.     The notice of candidacy and qualifying fee for presidential candidates is due in late June. O.C.G.A. § 21-2-132(d).

38.     The nomination petition for presidential candidates is due no later than noon on the second Tuesday in July. O.C.G.A. § 21-2-132(e). The Secretary's recent order extends that deadline for the 2020 election to noon on Friday, August 14, 2020.

39. Independent candidates do not appear automatically on the ballot for any office unless the candidate is an incumbent. Non-incumbent candidates must follow the same rules as political-body candidates.

### III. The Burdens of Georgia's Ballot-Access Restrictions

40. Georgia's signature requirement for political-body candidates for U.S. Representative in the Eighth and Thirteenth Congressional Districts are higher, in absolute terms, than any signature requirement that an independent or third-party candidate for U.S. Representative has ever overcome in the history of the United States.

41. No political-body candidate for U.S. Representative has ever satisfied the requirements to appear on Georgia's general-election ballot since the five-percent petition requirement was adopted in 1943.

42. Since 2002, more than 20 independent and political-body candidates for U.S. Representative have unsuccessfully attempted to qualify for the general-election ballot. Other potential candidates have been deterred by the signature requirement.

43. Georgia's general elections for U.S. Representative have been among the most uncompetitive in the nation. In the three election cycles from 2012 through 2016, Georgia had 15 unopposed races for U.S. Representative—more than any other state in the nation.

44. The Secretary of State's error-prone signature-validation process results in signatures being improperly rejected and signature-validation rates that are well below industry norms and those of other states. The most recent petition by an independent candidate for U.S. Representative resulted in a validation rate of only two percent. As a result, independent and political-body candidates must gather signatures far in excess of the number of valid signatures required to obtain ballot access under Georgia law.

45. The form of a nomination petition calls for a voter to provide a residential address, which is considered confidential, personally identifying information under Georgia law. O.C.G.A. § 21-2-225(b). In the past, potential petition-signers have expressed reluctance to sign, have provided incomplete information, or have refused to sign altogether, because of the information called-for by the form and the

possibility that it could be used for identity theft or other nefarious purposes.

46. The public-health emergency caused by COVID-19 makes it virtually impossible to gather petition signatures. Government officials at virtually every level are encouraging people to stay at home, to practice "social distancing," and to avoid being within six feet of other people.

47. Gathering signatures during the COVID-19 outbreak endangers public health and the lives of petition-circulators and potential signers.

48. Even if it were feasible to gather signatures during the current public health emergency, it is unlikely that petition-circulators would be able to gather very many signatures because there are fewer people congregating in public places and fewer people are likely to open their doors to strangers who come knocking.

49. The postponement of the March 24 presidential preference primary also has had a negative effect on signature-gathering. Even though Georgia law prohibits canvassing for signatures within 150 feet of a polling place, it is still possible to gather signatures outside of that

buffer zone at some polling locations, making them an especially attractive place to gather voters' signatures under normal circumstances.

50. The Secretary of State has also encouraged voters to make use of early voting and absentee voting in the upcoming elections, and that will likely reduce the number of voters present and available to sign petitions at the polls during the May 19 primary election.

51. Even after the public-health emergency subsides, the COVID-19 outbreak is likely to have a negative effect on signature-gathering. Voters may remain wary of close physical contact for some time.

### IV. Courts have Pro-Rated Petition Requirements in the Past

52. In *Parker v. Barnes*, Civ. No. 1:02-CV-1883-BBM (July 30, 2002), this Court pro-rated the number of signatures required of political-body candidates for U.S. Representative due to the fact that the boundaries of the congressional districts were not in place until 60 of the 180 days of the petitioning period had expired.

53. In 1982, a different federal court in *Busbee v. Smith,* civ. no. 82-0665 (D.D.C. 1982), suspended Georgia's five-percent signature

requirement due to preclearance litigation over the State's redistricting plan that delayed the adoption of new districts following the 1980 Census. Billy McKinney, who was an African-American and Democratic state representative from Atlanta, needed only 4,037 signatures to have his name placed on the general-election ballot as an independent candidate alongside the white Democratic incumbent, Wyche Fowler, in Georgia's Fifth Congressional District.

54. In both cases, the courts pro-rated the number of signatures based on the fraction of the petitioning period remaining.

**V.    The 2020 Election**

55. In Georgia's Eighth Congressional District, the Republican and Democratic parties have fielded candidates for the primary election in 2020. This means that there will be at least two candidates on the ballot in November. Plaintiff Cooper is the only independent or third-party candidate to submit a notice of candidacy and qualifying fee, so the maximum number of candidates on the general-election ballot is three.

56. In Georgia's Thirteenth Congressional District, the Republican and Democratic parties have fielded candidates for the primary election in 2020. This means that there will be at least two

candidates on the ballot in November. Plaintiff Cowen is the only independent or third-party candidate to submit a notice of candidacy and qualifying fee, so the maximum number of candidates on the general-election ballot is three.

57. With only three candidates for U.S. Representative on the ballot in 2020, the general-election ballot in Georgia's Eighth and Thirteenth congressional districts is not likely to be so long as to lead to voter confusion.

58. Georgia is likely to have at least three presidential candidates on its general-election ballot in 2020: one each from the Democratic, Libertarian, and Republican parties. Georgia has not had more than three candidates for President on its ballot since 2000, when it had four such candidates. This year, no serious independent candidates for President have yet emerged, and the only other political-body that is likely to make an effort to have its presidential candidate appear on Georgia's general-election ballot is the Green Party. As a result, there is not likely to be more than four candidates for President on Georgia's general-election ballot in 2020.

59. With only four candidates for President of the United States on the ballot in 2020, Georgia's general-election ballot is not likely to be so long as to lead to voter confusion.

60. Georgia may have a general run-off in January 2021 because of the large number of candidates running in the special election to fill Johnny Isakson's seat in the U.S. Senate.

61. A runoff for a statewide office like U.S. Senator would be more expensive than a runoff for U.S. Representative would be. If there were to be a runoff for both U.S. Senator and U.S. Representative, the latter would only add a small marginal cost.

62. In total, there are no more than 12 independent or third-party candidates at the state or federal level who timely filed a declaration of candidacy and paid the required qualifying fee in March 2020 but who have not yet submitted the nomination petition required by Georgia law.

## Claim One

63. Under present circumstances, Georgia's ballot-access laws for independent political-body candidates for President of the United States and U.S. Representative violate rights guaranteed to these

plaintiffs by the First and Fourteenth Amendments to the U.S. Constitution, as enforced by 42 U.S.C. § 1983.

## Relief

64. A real and actual controversy exists between the parties.

65. The plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

66. The plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

WHEREFORE, the plaintiffs respectfully pray that this Court:

(1) assume original jurisdiction over this case;

(2) enter a declaratory judgment that, in light of the current public health emergency caused by the novel coronavirus, Georgia's ballot-access laws for independent and political-body candidates for President of the United States and U.S. Representatives violate rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution, as enforced by 42 U.S.C. § 1983;

(3) enjoin the Secretary of State from enforcing O.C.G.A. § 21-2-170(d)(3), which requires that all signatures on a nomination petition be gathered within 180 days of the extended deadline, to the extent that signatures on any such nomination petition were gathered within 180 days of the original deadline;

(4) enjoin the Secretary of State from enforcing O.C.G.A. § 21-2-170(b), which contains the signature requirements, and from failing to accept petitions, for the 2020 election only, containing a number of valid signatures pro-rated as follows:

> (a) the start date shall be seven days after the Centers for Disease Control rescinds its guidance on social distancing and indicates that it is now safe for members of the public in Georgia to come into close contact with others (the seven days added to allow for petitioning efforts to ramp up);
>
> (b) the pro-rated number of signatures required shall be the number of days between the start date and the August 14 deadline divided by 180, multiplied by the original number of signatures required;

(c) if the start date has not occurred before the August 14 deadline, then the Secretary shall not require any signatures;

(5) award the plaintiffs the costs of this action together with their reasonable attorneys' fees under 42 U.S.C. § 1988; and

(6) retain jurisdiction of this action and grant the plaintiffs any further relief which may in the discretion of the Court be necessary and proper.

Respectfully submitted this 26th day of March, 2020.

**/s/ Bryan L. Sells**
Attorney Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com